# BALTIMORE CITY COURT.

Filed January 23, 1919.

CENTRAL CONSTRUCTION COMPANY, EMPLOYER, AND MARYLAND CASUALTY COMPANY, INSURER,

VS.

JOEL HARRISON.

*Walter L. Clark* and *A. J. Lilly* for appellants.

*Milton Roberts* and *Clifton S. Brown* for appellee.

BOND, J.—

All that the statute provides is that the injury sustained shall be one which arises *out of* and *in the course of* the employment. There is no statement that there shall be included injuries which may arise in any situation which the agreement of the employer and the employee may touch upon at all, even incidentally; and in setting up this or any other test of the actual provision,

we are in danger of making an unwarranted substitution. And this particular test would, I think, be a mistaken one. As was suggested at the time of the argument, an employer might, in order to secure workmen in a time of scarcity, agree to provide them with houses to live in; yet no one would think an injury sustained by a workman off duty at home would come within the provision of the statute. Again, no one would think to include an injury which might occur to a workman walking on a city street or a public road, or riding on a street car, on his way from his home to his work. Such injuries would clearly arise neither out of nor in the course of the employment. Those are extreme cases, perhaps, taken for illustration; but they serve to make it clear that we are not permitted to construe the statute to include injuries which may occur in any and all situations covered in the employer's agreement, or at any and all times after the employee has started towards his day's work. These are not sufficient tests. When an injury may be said to arise out of the employment and when not; and when a workman may be said to be about his own affairs and when within his employment, seem to be questions for which no general line of division, for all cases, can be drawn. The problem is one of nearness or degree in each case. I do not know of any addition to the words of the statute which might help to a solution of all the problems which may arise in application to particular cases.

These facts appear from the stipulation and from common knowledge: The employer was a contractor of the United States Government, doing work at Edgewood Arsenal, near Magnolia, during the war. There was a dearth of necessary laborers everywhere about Baltimore, and in competition for them extraordinary efforts had to be made to overcome disadvantages of distance, expense of travel and the like. Some of the workmen were housed at the site of the work, some lived at adjacent villages, and some who lived in Baltimore were carried to and fro by rail every day. To carry the increased number of men thus traveling between Baltimore and the various works at the Arsenal, the works of other contractors as well as of this one, the railroad company put on special trains. They were put on, as the stipulation recites, "simply because the increasing number of workmen made it difficult, if not impossible, to handle the situation on the regular local trains." For a time the employer paid for the transportation of the men. Later, and at the time with which we are concerned, the Federal Government, which under any arrangement paid the cost to its contractor, paid the railroad company directly for the transportation. The Government made this arrangement for free transportation of workmen of all contractors at the Arsenal alike. The workmen were checked on the train. None of them were allowed pay for time on the trains; men living at the site and men coming from the city were paid alike. If the "special work train" on which these men were expected to come to work should arrive late on any morning there was no deduction made ordinarily by the Central Construction Company for the consequent loss of working time.

Harrison was one of the Central Construction Company's workmen who came from Baltimore by train. He was permanently injured while attempting to board a train on his way to work at a place near the city where he happened to be because of misinformation about the trains.

I am unable to take the view that that injury was one which arose out of the employment and in the course of it. In a sense it may be said to have arisen out of the employment as far as the man living in the city was concerned, for it was the work which took him on the train; but the connection seems to me to be much more remote than the statute intends for inclusion in its provisions. The railway was not one of the ways of the work, not quite so closely at least as were the locations and ways in many of the cases cited. It was a public conveyance. And the workman had not, I think, entered upon the course of his employment while he was riding on it. It seems to me the case cannot be distinguished from one in which the employer might reimburse workmen for street railway fare, or provide them with tickets. If in such a case the street railway company should provide

special cars to accommodate the travel, then the two cases would be identical. Yet an injury on the street car under such circumstances would hardly be thought to come within the act, to arise out of and in the course of the employment. I have to hold, therefore, that the conclusion of the State Industrial Accident Commission was not correct; and as the statute provides that the decision of the Commission shall be reversed or modified whenever the court shall determine that the Commission has not correctly construed the law and facts (Section 56), the result is that the decision in this case must be reversed. It is not a case for any modification, of course.

There being no motion in the case for a jury trial, both the law and the facts are submitted to the court for decision; and in this case the decision being one and the same, whether it be classed as a ruling of law or as a finding of fact is unimportant. The appellants pray for a ruling in accordance with their contention as a matter of law, on the ground that the evidence is legally insufficient to show that the accident did arise out of and in the course of the employment. As is pointed out by the Court of Appeals in the three cases cited, the burden of proof having been placed by the statute on the appellant, a prayer which proceeds upon the theory that the appellee has a burden to meet would be erroneous. The appellant urges, however, that with stipulated facts there is nothing to be proved and, therefore, no burden of proof on either side; that there is left only the legal question of the meaning of the statute and its applicability to the facts determined. That is correct in this case, I think; but the prayer submitted is worded in the disapproved form, and a more exact declaration of law would be that embodied in the form which is substituted.

By what has just been said I do not intend to hold that whenever in any case there is a stipulation on the facts there will be only a question of law for the court. There may, of course, be stipulations which will leave some questions of fact still to be determined. The stipulation in this instance disposes of all questions of fact.

The decision of the State Industrial Accident Commission is reversed.